## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JARED SNOW and JENNY SNOW,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No.:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STATE FARM FIRE AND CASUALTY⠀)⠀⠀⠀⠀(District Court of Oklahoma
COMPANY, and JOSH FIELDS⠀⠀⠀⠀)⠀⠀⠀⠀County; Case No. CJ-2025-2437)
INSURANCE AGENCY, INC.,⠀⠀⠀⠀⠀)

⠀⠀⠀⠀⠀⠀⠀Defendants.

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446; and LCvR 81.2, Defendants State Farm Fire and Casualty Company ("State Farm"), a foreign corporation, and Oklahoma resident, and Josh Fields Insurance Agency, Inc., an Oklahoma corporation (hereafter "Fields Insurance Agency" and together with State Farm, the "Defendants"), hereby remove this action to the United States District Court for the Western District of Oklahoma, which is the federal judicial district in which this action is pending. In support of this Notice, State Farm states:

### Factual and Jurisdictional Background.

1.⠀⠀⠀⠀State Farm Fire and Casualty Company ("State Farm") is a Defendant in a civil action brought against it in the District Court for Oklahoma County, State of

Oklahoma, on April 10, 2025,[1] and titled *Jared Snow and Jenny Snow v. State Farm Fire and Casualty Company, and Josh Fields Insurance Agency, Inc.*, Case No. CJ-2025-2437. Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Fed. R. Civ. P. 81, and LCvR 81.2, State Farm, a foreign corporation, removes this action to the United States District Court for the Western District of Oklahoma, which is the judicial district in which the action is pending. *See* 28 U.S.C. § 116(c).

2.      Plaintiffs allege damages in excess of Seventy-Five Thousand Dollars ($75,000.00) – the amount required for diversity jurisdiction under 28 U.S.C. § 1332. (*See* Am. Pet., ¶¶ 62, 67, 77, 93, & "WHEREFORE" paragraph (a), attached hereto as Exhibit 3).

3.      Upon information and belief, at the time of the filing of this action and at the present time, Plaintiffs Jared Snow and Jenny Snow were and are residents and citizens of the State of Oklahoma. (*See* Am. Pet., ¶ 1, Ex. 3).

4.      At the time of the filing of this action and at the present time, State Farm was and is a foreign corporation, duly organized and existing under the laws of the State of Illinois and no other state, with its principal place of business in Illinois; it is not a citizen of Oklahoma.

---

[1] Plaintiffs amended their Petition, filing an Amended Petition on September 19, 2025 (hereafter, the "Amended Petition") (*See* Petition, attached hereto as Exhibit 2; Amended Petition, attached hereto as Exhibit 3).

5.      Upon information and belief, Defendant Fields Insurance Agency, Inc. was and is a domestic corporation, duly organized and existing under the laws of the State of Oklahoma and no other state, with its principal place of business in Oklahoma.

**Only properly joined defendants are material in the diversity analysis.**

6.      Even though the Fields Insurance Agency is a resident of the State of Oklahoma, its citizenship is immaterial because it is a fraudulently joined party against whom Plaintiffs do not have "any possibility of recovery." *Smith v. Allstate Vehicle & Prop. Ins. Co.*, No. CIV-14-0018-HE, 2014 WL 1382488, at *1 (W.D. Okla. Apr. 8, 2014) (internal quotation marks omitted). Only ***properly joined*** defendants are material for diversity analysis. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest ***properly joined*** and served as defendants is a citizen of the State in which such action is brought." (emphasis added)); 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been ***properly joined*** and served must join in or consent to the removal of the action." (emphasis added)). Therefore, as set forth below and apparent from the Petition, this Court should disregard the alleged citizenship of the Fraudulently Joined Defendants for purposes of diversity. *See Smith*, 2014 WL 1382488 at *4.

7.      As the United States Supreme Court has recognized for well over a century, the right of removal "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co*., 257 U.S. 92, 97 (1921). A defendant can prove fraudulent joinder by showing that either:

(1) plaintiff's jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. *Gellner v. Progressive N. Ins. Co.*, No. 21-CV-0401-CVE-JFJ, 2021 WL 5789146, at *2 (N.D. Okla. Dec. 7, 2021) (citing *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006)).

8.     "[I]n cases where fraudulent joinder is claimed, we have directed courts to 'pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'" *Nerad v. AstraZeneca Pharm., Inc.*, 203 Fed. Appx. 911, 913 (10th Cir. 2006) (citation omitted). "In so doing, the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." *Id.* "A 'reasonable basis' means . . . [the claim] must have a basis in the alleged facts and the applicable law." *Id.* Here, the Fraudulently Joined Defendants are not properly joined because there is no "reasonable basis to believe the plaintiff might succeed in at least one claim against [them]." *See Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006).

**Plaintiffs' Allegations Against the Fraudulently Joined Defendant Do Not Have a Basis in Applicable Law.**

*Plaintiffs' Negligent Procurement and Misrepresentation Claims are Not Legally Cognizable*

9.     Plaintiffs purport to sue the Fields Insurance Agency for negligent procurement of insurance, constructive fraud, negligent misrepresentation, deceit, and concealment based on representations allegedly made during the renewal and

maintenance of its policy. Yet, Plaintiffs' allegations against the Fields Insurance Agency ultimately relate to State Farm's underwriting of its claim. Plaintiffs generally allege that they "requested a policy from Fields that would fully replace the Insured Property's roof in the event of a loss, without exclusion of any weather-related losses," (Am. Pet. ¶ 10, Ex. 3), but ultimately suffered a loss due to State Farm's claims-handling when they "had to file a claim for ostensibly covered wind/hail damage sustained as a result of a storm on or about April 10, 2023." (*Id.* at ¶ 40, Ex. 3). Here, however, Paula Forbes applied for the Policy at issue on June 6, 1978. (*See* Policy Application, attached hereto as Exhibit 5.) An Ina Forbes deeded the home over to Jared Snow with a lifetime estate, around 2006. (*See* Underwriting Note, attached hereto as Exhibit 6) Thus, despite the allegations, it is entirely unclear from the actual records that Mr. and Mrs. Snow did anything to request a specific type of policy from Josh Fields Insurance Agency, Inc., an entity that was not formed until January 22, 2021.

10.    The Amended Petition further alleges that "neither Fields nor State Farm ever took any affirmative step to actually verify whether Plaintiffs' home met State Farm's underwriting guidelines (*e.g.*, inspecting the home, performing independent research, etc.)." (Am. Pet. ¶ 12, Ex. 3). This is also untrue. State Farm's underwriting file demonstrates that a survey was conducted by Insurance Risk Services in 2020. (*See* Survey, attached hereto as Exhibit 7). Further, photos taken at a separate time indicate that State Farm or a third party also investigated and took photos of the property as part of the underwriting process. (*See* Photos, attached hereto as Exhibit 8).

4908-4950-1813, v. 1

11. Plaintiff further (incorrectly) alleges that Fields owed a number of duties, including, to "take affirmative actions to ensure the Insured Property continued to satisfy those [underwriting] guidelines through the lifetime of the Policy." (*See, e.g.*, Am. Pet. ¶ 73(e), Ex. 3). These allegations do not comport with a "cognizable legal theory" under Oklahoma law, *see Gernandt v. SandRidge Energy, Inc.*, CIV-15-1001-D, 2018 WL 5848986, at *1 (W.D. Okla. Nov. 8, 2018), because they ignore controlling law regarding an insurance agent's duties to an insured. *See Swickey v. Silvey Co.,* 1999 OK CIV APP 48, ¶ 13, 979 P.2d 266, 269.

12. To defeat a fraudulent joinder argument and maintain a claim against a non-diverse defendant, the claim "must have a basis in the alleged facts and the applicable law." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006). Plaintiffs' claims against the Fraudulently Joined Defendant are not cognizable under applicable law and therefore constitute fraudulent joinder.

13. Plaintiffs' allegations against the Fields Insurance Agency, essentially amount to "negligent procurement" of an insurance Policy. While under Oklahoma law "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance," *Swickey*, ¶ 13, 979 P.2d at 269, only if "by the agent's fault, insurance is not procured as promised and the insured suffers a loss" as a result can an agent be liable in tort for breaching this duty of care. *Id*. (emphasis added). "[T]o prevail on a claim for [negligent procurement], a Plaintiff must show that the insurance agent agreed to procure insurance coverage effective as of a certain date and time, or of a certain breadth, and then failed to do so." *Pardue v. Humble Ins. Agency,* No. CIV-14-

1049-D, 2016 WL 4275816, at *2 (W.D. Okla. Aug. 12, 2016) (quoting *Hardison v. Balboa Ins. Co.*, 4 F. App'x 663, 673 (10th Cir. 2001)). "However, 'insurance companies [and] their agents [do not] have a duty to advise an insured with respect to his insurance needs.'" *E.g.*, *Rotan v. Farmers Ins. Grp. of Companies, Inc.*, 2004 OK CIV APP 11, ¶ 2, 83 P.3d 894, 895 (alterations in original) (quoting *Mueggenborg v. Ellis*, 2002 OK CIV APP 88, ¶ 7, 55 P.3d 452, 453).

14.     Further, an agent's duty under a misrepresentation theory is no different than the duty underlying a negligent procurement theory, and "Oklahoma courts have found that insurance companies and their agents do not have a duty to advise someone as to their insurance needs." *Siddique v. W. Heritage Ins. Co.*, CIV-14-456-SPS, 2015 WL 2451734, at *4 (E.D. Okla. May 21, 2015) (citing *Mueggenborg*, ¶ 7, 55 P.3d at 453). "If, then, there is no duty, then such a claim of constructive fraud by way of negligent misrepresentation must fail." *Id.* (citing *Cosper*, ¶ 11, 309 P.3d at 149–150).

15.     Moreover, Plaintiffs cannot create agent liability that does not otherwise exist under the guise of negligent procurement or other tort theory. *Woodward v. New York Life Ins. Co*., No. CIV-07-1067-HE, 2008 WL 11337956, at **2-3 (W.D. Okla. Jan. 28, 2008) (rejecting plaintiff's request to amend to state negligent procurement theory against agent who allegedly failed to disclose information relevant to disposition of the policy because "Oklahoma case law indicates that an agent cannot be sued in tort under these circumstances").

16.     But the Amended Petition makes clear that it is not the Policy or any of its terms about which Plaintiffs complain; rather, Plaintiffs complain of State Farm's claim

decision and the amount of coverage they purchased (and renewed multiple times). Their failure to plead facts to show the "Agent" did not procure "coverage . . . of a certain breadth" is further fatal to its claims against the Fields Insurance Agency. *See Pardue*, 2016 WL 4275816 at *2.

17.    The Policy makes plain it ***was up to Plaintiffs*** to choose their coverages and limits. (Renewal Declarations at 6, attached hereto as Exhibit 9) ("It is up to you to choose the coverages and limits that meet your needs."). And State Farm "agree[d] to provide the insurance described in [the Policy] . . . ***based on the information [Plaintiffs gave it]***." (Policy at 1, Ex. 10 (emphasis added)). Further, in the renewal declarations an important message was included.  It provides "Please call your agent with any questions. Coverage A has increased $28,800.00 over last year. Please help us update the data used to determine your premium. Contact your agent with each year of your home's utilities (heating/cooling, plumbing or electrical) and roof were last updated." Plaintiffs do not allege they reached out the Fields Insurance Agency, Inc. to review this coverage increase. So, any issue as to coverage amounts did not lead to any of the damages that Plaintiffs assert via their claim for damage to the roof." *Goebel*, 2023 WL 11883977 at *4; *see also Marino*, 2023 WL 11915691 at *4.  Here, Plaintiffs had more than adequate coverage should State Farm have determined there was actual direct physical loss to the roof shingles.

18.    Plaintiffs' Petition further attempts to impose upon an insurance agent underwriting type duties, arguing an obligation to inform insureds of the condition of their property. Regardless, this theory presupposes a duty to the insured with regard to

underwriting which does not exist. Not only does no such duty exist under extant law, the

Policy expressly states:

> **We** have the right but are not obligated to perform the following: (1) make
> inspections and surveys of the **insured location** at any time; (2) provide **you** with
> reports on conditions **we** find; or (3) recommend changes. Any inspections,
> surveys, reports, or recommendations relate only to insurability and the premiums
> to be charged. b. **We** do not: (1) make safety inspections; (2) undertake to perform
> the duty of any person or organization to provide for the health or safety of
> workers or the public; (3) warrant that conditions are safe or healthful; or (4)
> warrant that conditions comply with laws, regulations, codes, or standards. This
> condition applies to **us** and to any rating, advisory rate service, or similar
> organization that makes insurance inspections, surveys, reports, or
> recommendations on **our** behalf."

(*See* Policy, p. 32-35, Section I and Section II Conditions, item 12(a) and (b), attached

hereto as Exhibit 10). The courts who address the issue, moreover, are in agreement that

an agent owes no underwriting duty to the insured. *Marino*, 2023 WL 11915691 at *3

("[P]laintiff has not identified any Oklahoma case suggesting that whatever role an agent

plays in the underwriting process results in a duty owed to the insured."); *Goebel*, 2023

WL 11883977 at *4 ("[T]here is no basis shown for concluding that [State Farm Agent]

Garetson undertook or otherwise had a duty beyond securing the issuance of the initial

and renewal policies for full replacement coverage."). This makes sense, as the Policy

reflects, insurance companies conduct underwriting for their own benefit—to recognize

and reduce risk—and not as a service to inform prospective (or existing) insureds of the

condition of their house. *Gray v. Derderian*, 464 F. Supp. 2d 105, 109 (D. R.I. 2006).

19.    Plaintiffs' Petition generally complains of the Fields Insurance Agency's

"binding" process. (*See, e.g.*, Am. Pet. ¶ 14, Ex. 3). These allegations attempt to enlarge

the agent's role and entirely conflate an agent's limited role in policy issuance and the insurer's subsequent carrying out of the policy terms. "Binding authority" does not mean the agent had authority to bind State Farm to carry out the Policy in any particular way. "'[B]inding authority' [] refer[s] to the insurance industry concept of an insurance agent's ability to temporarily 'bind' coverage, which occurs prior to the insurer's issuance of a policy." *Peerless Ins. Co. v. M.A.S.S. Servs., Inc.*, No. 806-CV-250T-27TGW, 2007 WL 2916386, at \*7 n.11 (M.D. Fla. Oct. 5, 2007). This "binding" authority is not the same as, and does not overlap with, the exclusive authority and responsibility of the insurer to perform the policy on behalf of the carrier, *e.g.*, by deciding and paying a claim for coverage. The insurer has exclusive authority on policy performance because the contract of insurance is only between the insurer and the insured, and the insurer has a non-delegable duty to interpret and apply the policy and investigate, evaluate, and pay claims thereunder. *Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*, 2014 OK 106 ¶ 29, 341 P.3d 75, 86. Because "this duty is non-delegable," only the "insurer can be held liable for breach of the duty due to the actions of its . . . agents." *Id.*

20. Nor is there a cognizable tort theory under Oklahoma law imposing liability on an agent for the insurer's performance of the policy. *Shebester v. Triple Crown Insurers*, 1992 OK 20, ¶ 16, 826 P.2d 603, 609 (we "remain unpersuaded that a new tort should be fashioned to hold an insurer's agent liable *ex delicto* for failure to pay proceeds"). Plaintiffs cannot create agent liability that does not otherwise exist under the guise of negligent procurement or other tort theory. *Woodward v. New York Life Ins. Co.*, No. CIV-07-1067-HE, 2008 WL 11337956, at \*\*2-3 (W.D. Okla. Jan. 28, 2008)

(rejecting Plaintiffs' request to amend to state negligent procurement theory against agent who allegedly failed to disclose information relevant to disposition of the policy because "Oklahoma case law indicates that an agent cannot be sued in tort under these circumstances"). There is no actionable duty on the part of the Fields Insurance Agency to ensure State Farm pays a claim pursuant to the coverage procured. Thus, the Fields Insurance Agency's alleged actions are not relevant to this lawsuit, which is premised entirely upon an alleged "scheme" of State Farm to underpay Plaintiff's claim for full roof replacement *that it insists was covered under the Policy as issued.*

21.    Plaintiff further ties its disagreement with State Farm's claim handling practices to the Fields Insurance Agency by arguing "State Farm employs a narrow definition of covered hail damage." (Am. Pet., ¶ 28, Ex. 3). Plaintiff further alleges "State Farm's agents are solely responsible for explaining this undefined, narrowed definition of hail and limited scope of coverage to policyholders." (*Id.* at ¶ 32). This "scheme" appears to generate when "State Farm (and its agents, like Fields) represent the form policy to be a replacement cost policy." (*Id.* at ¶ 26)—an unremarkable and innocuous fact given that all policies sold in this State must be filed with and approved by the Oklahoma Department of Insurance ("DOI"), and thus, all insurers sell form policies, examples of which are available on the DOI website. *See* Home Insurance Policies, Oklahoma Insurance Department, https://www.oid.ok.gov/consumers/insurance-basics/home-insurance-policies/ (last visited Jan. 10, 2025).

22.    Plaintiff alleges "State Farm uses a form replacement cost policy to issue homeowners insurance coverage in Oklahoma—including when issuing Plaintiff's

Policy," (Am. Pet., ¶ 25, Ex. 3) and that the "form policy purports to function as an 'all risk' policy—if the policy does not expressly exclude a loss, then it should be covered." (*Id.* at ¶ 26). They urge that "[t]he policy does not define, limit, or otherwise mitigate coverage for wind or hail damage outside of" the policies limitation to accidental direct physical loss ("ADPL"). (*Id.* at ¶ 27). Plaintiff further complains that "nothing is provided to an insured that defines covered wind or hail damage." *Id.*

23.    Any complaint as to the lawfulness or permissibility of the policy and the marketing of it is not properly before the court. Instead, the DOI is entrusted with the obligation of authorizing the provision of insurance by insurers and of reviewing and approving insurance contracts for sale in Oklahoma—a responsibility that Plaintiffs effectively challenge in complaining about the form policy and its absence of a definition of hail. 36 O.S. § 3610(A) ("No insurance policy form or application form, where written application is required and is to be made a part of the policy, rider or endorsement form other than surety bond forms and such other insurance policy forms as are hereinafter specifically otherwise provided for shall be issued, delivered, or used unless filed with and approved by the Insurance Commissioner."). The Insurance Commissioner is "charged with the duty of administration and enforcement of the provisions of the Oklahoma Insurance Code[] [and] of any requirements placed on an insurance company pursuant to the Oklahoma Statutes." 36 O.S. § 307. The Commissioner has "jurisdiction over complaints against all persons engaged in the business of insurance" and must "hear all matters." *Id.* And importantly for this case, the Commissioner is granted specific authority to regulate and "investigate into the affairs of every person engaged in the

business of insurance in this state in order to determine whether such person has been or is engaged in any . . . unfair or deceptive act or practice prohibited by Section 1203 of this article," including "[m]isrepresentations and false advertising of policy contracts." 36 O.S. §§ 1203-1205. To the extent Plaintiffs claims against the agent are based on the sale of the State Farm form policy authorized by the DOI, they are further subject to dismissal because the DOI has jurisdiction over them. *See Jennings v. Globe Life & Acc. Ins. Co. of Oklahoma*, 1996 OK 85, ¶¶ 9-13, 922 P.2d 622, 625-26 (finding that the district court did not err in dismissing lawsuit alleging insurance company violated Oklahoma law by paying commissions to its agents in excess of the maximum rate allowed by state regulations because the statute did not allow for private right of action but granted the Commissioner the authority to hear such complaints); *see also Walker v. Grp. Health Servs., Inc.*, 2001 OK 2, ¶ 36, 37 P.3d 749, 761, *as corrected on denial of reh'g* (Apr. 23, 2001) (observing that the doctrine of primary jurisdiction "comes into play whenever adjudication of the claim calls for resolution of issues which, under a regulatory scheme, are placed within the special competence of an administrative agency" and "[w]hen applicable, the doctrine results in judicial process being suspended pending disposition of the issues referred to an administrative body"); *Public Service Co. of Oklahoma v. Norris Sucker Rods*, 1995 OK CIV APP 101, ¶¶ 13-15, 917 P.2d 992, 996 (concluding the Corporation Commission was the only forum in which a utility customer could seek relief for a rate dispute).

24.    Further, while Plaintiffs allege there are clandestine definitions of hail at work here, which is why Plaintiffs' total roof was not replaced, these allegations are

simply not true. The cover of State Farm's policy provides, "[w]e want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions". (*See* Policy at 1, Ex. 10). The policy does not insure for any loss to the property caused by "wear, tear, decay, . . . deterioration, . . . or mechanical breakdown." (*Id.* at 15). Ultimately, Plaintiffs' lawsuit has nothing to do with the Fields Insurance Agency, the coverage limit in the policy, or whether it is an RCV policy. This is a simple contractual dispute between State Farm and Plaintiffs over the express language of an exclusion under the policy, not a hidden "scheme" and over whether what a roofing contractor deems to be hail damage is or is not storm-related damage.

25.    Plaintiffs' Petition is also replete with confusing and irrelevant allegations regarding the agent's alleged calculation of the replacement cost value of the property. (*See, e.g.*, Am. Pet., ¶¶ 16-23, Ex. 3). It is unclear how estimated coverage amount factors into State Farm's coverage decision or how this is inconsistent with the Policy's provision that State Farm "agree[d] to provide the insurance described in [the Policy] … ***based on the information [Plaintiffs gave it]***." (Policy at 1, Ex. 10 (emphasis added)). Regardless of who selected the amount of insurance, there can be no dispute Plaintiffs had sufficient coverage to replace their roof. The Declarations show Plaintiffs had $228,500.00 in coverage at the time of the loss—far more than enough to install a new roof. (Declarations at 2, Ex. 9). "So, any issue as to coverage amounts did not lead to any of the damages that Plaintiffs assert via their claim for damage to the roof." *Goebel*, 2023 WL 11883977 at *4; *see also Marino*, 2023 WL 11915691 at *4.

26.    Plaintiffs' negligent misrepresentation/constructive fraud claim, premised on the same erroneous facts, is implausible for the same and similar reasons. To state a claim for constructive fraud, Plaintiffs must allege facts to show (1) defendant owed Plaintiffs a duty of full disclosure; (2) defendant misstated a fact or failed to disclose a fact to Plaintiffs; (3) defendant's misstatement or omission was material; (4) Plaintiffs relied on defendant's material misstatement or omission; and (5) Plaintiffs suffered damages as a result. *Lillard*, 267 F. Supp. 2d at 1113. None of these elements exist.

27.    While Plaintiffs state in a conclusory nature that their agent made misrepresentations, the Petition lacks actionable statements that are shown with particularity. In their Petition, Plaintiffs allege "the scope of coverage promised that was supposedly procured by Fields was illusory," and that "[s]pecifically, Fields misrepresented the Policy as providing comprehensive replacement cost coverage . . . ." (*See* Am. Pet. ¶¶ 83, Ex. 3). Plaintiff alleges that "Fields further misrepresented the Insured Property was in good condition and met all underwriting requirement and that the replacement cost values she calculated were accurate and commensurate with reconstruction costs such that the coverage would fully restore, replace, and/or repair Plaintiff's Insured Property (including Plaintiff's roof) in the event of a loss by a covered event." (*Id.* at ¶ 85). However, the specifics of Plaintiffs' allegations are vague and generalized. Plaintiffs claim "Fields breached this duty by misrepresenting and/or concealing pertinent material facts from Plaintiff" and then lists some general allegations related to State Farm's underwriting procedures. (*Id.* at ¶ 86). Plaintiffs further allege that "State Farm agents make these representations—that the Insured Property qualifies for

coverage under State Farm's underwriting guidelines—uniformly in each instance of the Scheme." (Am. Pet. ¶ 87). These allegations are clearly not particular. In fact, where they've name an entity as the defendant, it's not clear who at Fields made these alleged representations.  What is clear is that the allegations with respect to Fields issuing this Policy are just false, as it is impossible Fields could have issued this Policy in 1978. (*See* Policy Application, Ex. 5). Plaintiffs claim that the nature of State Farm's underwriting creates a fraudulent misrepresentation every time a policy is sold. This is insufficient to justify the pleading of fraud with particularity as required by Fed. R. Civ. P. 9(b).

28.    Further fatal to the claim is that none of these alleged misrepresentations ***caused*** the damages of which Plaintiffs complain. Plaintiffs' complaint is that they were not provided coverage under the policy. The only injury alleged by Plaintiffs for any claim is that "[a]s a result of the ***Defendants'*** [conduct]"—not Josh Fields or any particular person at the Fields Insurance Agency—"Plaintiffs sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering . . . ." (Am. Pet., ¶ 77 (bad faith claim); *id.*, ¶ 93 (negligent procurement claim), Ex. 3). ***Plaintiffs suffered no damage from the alleged misrepresentations because none are the reason for the claim decision.*** The only "deprivation of monies" identified (or even plausible) was State Farm's refusal to pay to replace Plaintiffs' roof because it found it was not damaged by wind or hail. That decision had nothing to do with inspections being completed before policy issuance, whether the roof met all "underwriting guidelines," or whether Plaintiff had sufficient coverage to replace its property. *Cf. Smith*, 2014 WL 1382488 at *4 n.7

("[P]laintiffs cannot recover for alleged misrepresentations made regarding coverage for a total loss when their home was not totally destroyed").

29.    The allegations in the Petition also make clear that the alleged statements were true.  Plaintiff's house **did** satisfy underwriting and qualified for replacement cost coverage. The Policy State Farm issued, and under which Plaintiff sues and seeks benefits, is an RCV policy. *See Smith*, 2014 WL 1382488 at *2 (rejecting claim agent misrepresented property would be replaced without any deduction for depreciation where policy provided for replacement without depreciation if the insured repaired or replaced the property). Plaintiffs' Policy covers wind and hail damage. (*See* Policy, p. 12, § I, Ex. 10). Plaintiffs admit State Farm found some covered damage to the roof and estimated to repair or replace numerous items due to covered damage. (*See* Am. Pet., ¶ 45, Ex. 3 (State Farm advised Plaintiffs "of a payment in the amount of $552.85 owed for the repairs to the Insured Property…. [t]he estimate only accounted for hail damage to the soft metals (i.e., root (sic) vent, ridge and rain caps, fascia soft metals, window screens, gutters and wrap wood/aluminum window frames) but states no storm related damage was found to the roofing surface").

30.    Similarly, and independently, the fraud-based claims against the Fields Insurance Agency are non-cognizable because they are premised upon an alleged promise by the "Agent" of future performance, and by another entity—State Farm. "For a false representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." *Citation Co. Realtors, Inc. v. Lyon*, 610 P.2d 788, 790 (Okla. 1980) (emphasis added); *see also*

*CMI Roadbuilding, Inc. v. SpecSys, Inc.*, No. CIV-18-1245-G, 2021 WL 2189190, at \*3 (W.D. Okla. May 28, 2021) *reconsideration denied*, No. 5:18-CV-01245-G, 2021 WL 2404354 (W.D. Okla. June 11, 2021) (providing same requirement for constructive fraud). Promises of future performance cannot constitute constructive fraud because they cannot be shown to be true or false at the time made. *Citation Co. Realtors*, 610 P.2d at 790; s*ee also Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1172 (10th Cir. 1993); *Briggs v. State Farm Fire & Cas. Co.*, No. 3:14CV16-DPJ-FKB, 2014 WL 1355627, at \*3-4 (S.D. Miss. Apr. 7, 2014) (finding no arguably reasonable basis to predict success against agent on claim for fraudulent and/or negligent misrepresentation where complaint accused him of promising—many years before the loss—that the insurer "would fairly and accurately assess any damage and adjust any claim the Plaintiffs might have during the term of the contract of insurance and pay to the Plaintiffs the cost to repair or replace the Plaintiffs' home up to the limits of the policy of insurance, even if it was a total loss"; such statements were not representations of existing facts and thus could not form the basis of a misrepresentation claim). Here, the claims depend upon the "Agent" promising State Farm would pay to replace Plaintiffs' entire roof (not just the portions of the roof upon which there was covered damage) in the event of a weather-related loss, which promise Plaintiffs allege was not fulfilled because State Farm denied their claim for full roof replacement. Plaintiffs do not, and cannot, allege the "Agent" intended not to perform this promise; the promise that could only be kept by State Farm.

31.     The only specific statements Plaintiffs attribute to the Fields Insurance Agency are copied and pasted from the website and do not speak to representations

regarding the Policy, inspections, or State Farm's claim handling, but the Defendants' ***customer service***. (Am. Pet. ¶ 19, Ex. 3). Most importantly, there are no allegations that these images or videos from his website were ever viewed by Plaintiffs or relied upon by Plaintiffs. (*Id.* at ¶¶ 50-51). To the extent these were viewed by Plaintiffs, they are, at most, an expression of opinion or "puffing" and not constructive fraud as a matter of law. *Hall v. Edge*, 1989 OK 143, ¶ 11, 782 P.2d 122, 126 ("[A] seller's opinion which is nothing more than 'puffing' will not give rise to an action based on misrepresentation."); *Pine Tel. Co. v. Alcatel-Lucent USA, Inc.*, No. CIV–11–353–JHP, 2014 WL 318331, at *8 (E.D. Okla. Jan. 29, 2014*), rev'd on other grounds*, 617 F. App'x 846 (10th Cir. 2015) (finding allegations in complaint that defendant promised its telecommunications equipment and technology would "'outperform offerings' by competitors, 'provide [Plaintiffs] the advantage of offering better service to [its] customers' and 'allow [Plaintiffs] to gain significant operational expense savings' and 'capture a large share of the wireless data market'" were statements of opinions or promises of future performance and could not sustain a claim of fraudulent inducement).

32.    The element of reliance is likewise absent. Plaintiffs could not have reasonably relied upon any alleged misrepresentations about their Policy because they received a copy—evidenced by the screenshot of the Policy included in the Petition. (*See*, Am. Pet., ¶ 26, Ex. 3). It has long been the law that insureds have a duty "to read and know the contents of the polic[y]" before they accept it and an applicant "who accepts [a policy] the provisions of which are plain, clear, and free from all ambiguity, is chargeable with knowledge of the terms and legal effect." *Liverpool & L. & G. Ins. Co. v. T.M.*

*Richardson Lumber Co.*, 1902 OK 7, ¶ 5, 69 P. 936, 937; *see also Country Gold*, 2015 WL 431638 at *4 (dismissing constructive fraud claim in part because there was no dispute Plaintiffs received policy and thus could not have reasonably relied upon any misrepresentations about it); *Siddique*, 2015 WL 2451734 at *4-5 (same). There were no misrepresentations, no duty, and no injury.

33.     In short, Plaintiffs' claims against the Fraudulently Joined Defendants do not "have a basis in the alleged facts and the applicable law." *See Nerad*, 203 F. App'x at 913. As a result, they are not properly joined and should be disregarded from this Court's diversity analysis.

**Removal is Proper for this Breach of Contract and Bad Faith Dispute between Plaintiff and State Farm**

34.     Consent to removal is only required from "defendants who have been properly joined and served." 28 U.S.C. § 1446(b)(2)(a). Thus, consent by the Fraudulently Joined Defendant is not required.[2]

35.     Plaintiff claims to be entitled to recover "damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorneys' fees, costs and interest." (*See, e.g.*, Am. Pet. ¶¶ 62, 67, 77, 93, WHEREFORE Paragraph (a), Ex. 3). Therefore, the amount in controversy requirement imposed by 28 U.S.C. § 1332 is met.

---

[2] Indeed, as improperly joined parties, the Fraudulently Joined Defendants are not subject to this Court's jurisdiction and Plaintiff's claims against it must be dismissed. *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004); *Hicks v. FG Mins. LLC*, No. CIV-19-203-TDD, 2020 WL 2104928, at *6 (E.D. Okla. May 1, 2020); *Jonnada v. Liberty Ins. Corp.*, No. CIV-19-456-D, 2019 WL 6119233, at *5 (W.D. Okla. Nov. 18, 2019).

36.     Because the properly joined parties are diverse and the amount in controversy exceeds $75,000, this Court has original jurisdiction because of diversity of citizenship and sufficiency of amount in controversy.

37.     <u>Attachment of State Court Papers.</u>  Pursuant to 28 U.S.C. § 1446 and LCvR 81.2, copies of the Docket Sheet (attached hereto as Exhibit 1), the Petition (attached hereto as Exhibit 2), Amended Petition (attached hereto as Exhibit 3), and Return of Service-State Farm (attached hereto as Exhibit 4).  The aforementioned are the only papers filed in the State Court Action as of the time of this removal.

38.     <u>Removal is Proper.</u>  Removal to this Court from the District Court of Grady County, State of Oklahoma, is proper pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446 in that: (1) there is complete diversity of citizenship between Plaintiff and State Farm; (2) the amount in controversy exceeds $75,000; and (3) this Notice of Removal is filed less than thirty (30) days after State Farm received a copy of either the Petition or Amended Petition.

4908-4950-1813, v. 1

Respectfully submitted,


*/s/ Lance E. Leffel*
Lance E. Leffel   OBA #19511
Zoe Butts Dowdell OBA #33137
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
lleffel@gablelaw.com
zdowdell@gablelaw.com
Telephone:  405.235.5500
Facsimile:   405.235.2875

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Jeff D. Marr, OBA No.; 16080
Carole Dulisse, OBA No.: 18047

*/s/ Lance E. Leffel*

4908-4950-1813, v. 1